UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANNITRA VERRETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-585-B |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

In this action, Plaintiff Annitra Verrett brings an age discrimination claim under the Age Discrimination in Employment Act (ADEA) and claims of retaliation and breach of contract against her employer, Defendant Dallas Independent School District ("DISD or Defendant"). Pending before the Court is Defendant's Motion for Summary Judgment (doc. 16). Finding that Verrett has failed to carry her burden of proof at the summary judgment stage, Defendant's Motion is GRANTED in its entirety.

### I. BACKGROUND

#### A. Factual Background

In 1986, Defendant DISD hired Plaintiff Annitra Verrett as a pre-kindergarten teacher at the Robert Cooker Buckner school. In October 2000, Verrett became an Instructional Specialist, and her quoted salary was $45,636. Concerned with the quoted salary, she filled out an Employee Paycheck Inquiry questioning the calculation. Verrett felt that she was not being compensated for the additional working days attendant to her new position as an instructional specialist. Verrett

nevertheless accepted the job offer, and, in relevant part, she signed a three-year teacher term contract, dated March 30, 1999, that states that:

> The Board shall pay the Teacher an annual salary pursuant to a schedule of work days and applicable compensation policies as adopted by the Board but in no event less tan the state minimum salary.

Def. App. 20.[1]

In September 2001, Carlos Tapia, the DISD Executive Director of Compensation met with Verrett to address her concerns and to explain the salary calculation. In the fall of 2000, DISD had "'compressed' the number of steps used to compensate professional positions" and "[t]his process was outlined in the District's Compensation Handbook for 2000-2001." Def. App. 36, 42. In October 2001, Verrett again questioned her salary in a Salary Request Review Form.

In two separate written responses, dated December 7, 2001 and January 8, 2002, DISD provided written responses to Verrett's inquiries. In the December letter, Willie Crowder, DISD Associate Superintendent, advised Verrett that she was "being paid as other instructional specialists based on your degree and number of years of service." Pl. App. 16. Crowder also notified her that she had been overpaid for the 2001-2002 school year.[2] *Id.* In the January letter, Tapia explained the precise calculation of her quoted salary. Pl. App. 17. Starting with Verrett's educational background and 13 years of experience, DISD found that she fit into Step 8 ($44,207) of the 1999-

---

[1] Verrett later signed "employee term contracts" on April 8, 2002, April 9, 2003 and August 10, 2005. Def. App. 21-23. In each contract, DISD agreed to pay Verrett on a salary scheduled as "approved" or "adopted" by the Board. *Id.*

[2] While DISD advised Verrett that they wanted to deduct incremental payments from her salary to account for the overpayment, there is no record evidence to demonstrate that such deductions were actually made from Verrett's paychecks.

2000 salary schedule. *Id.* Then, looking to the 2000-2001 schedule, the closest salary was Step 6 ($44,325). *Id.* DISD then incorrectly advanced Verrett to Step 7 ($45,636), the quoted salary at issue and an apparent administrative miscalculation. *Id.* Tapia also advised Verrett the differences between 187-day teacher salaries and 215-day instructional specialist salaries was attributable to the career ladder credit applicable to teachers but not specialists. *Id.*

On January 22, 2002, Verrett filed a formal grievance. The administrative panel denied her grievance on June 20, 2002 noting that Verrett's salary bump to Step 7 "was an error that should not have occurred" and that the salary scales for teachers and specialists did not mirror each other. Pl. App. 21. The Board of Trustees likewise found, on March 3, 2006, that Verrett's appeal should be denied. During the pendency of her grievance appeal, Verrett was promoted to Assistant Principal. Her salary was bumped to $53,000, and is, currently, at $59,000.

### B. Procedural Background

On January 3, 2007, Verrett filed a Charge of Discrimination against DISD with the Texas Workforce Commission Civil Rights Division. She averred that she was "subjected to different terms and conditions of employment than similarly situated employees" and that she was being discriminated against because she was 46-years old at that time. Pl. App. 15. That same day, the Equal Opportunity Employment Commission (EEOC) issued a Dismissal and Notice of Rights Letter for Verrett. On April 2, 2007, Verrett filed the instant action. On June 6, 2008, DISD filed its motion for summary judgment. Plaintiff failed to file a timely response.[3] That motion is now ripe

---

[3] The Court will normally strike untimely responses, particularly when the offending party have neither sought an extension, requested leave to file nor proffered any excusable neglect. *Graham v. Dallas Independent School Dist.*, 2006 WL 2468715 (N.D. Tex. 2006) ("In fact, plaintiff offers no explanation whatsoever for her tardy filings and does not even respond to defendant's objections. For that reason alone, the court may decline to consider plaintiff's summary judgment response and appendix."); *Schwarz*

for consideration.

## II. ANALYSIS

### A. Summary Judgment Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

DISD's main contention is that the applicable statute of limitation bars Verrett's age discrimination and claims of retaliation and breach of contract. Verrett counters belatedly that the statute of limitation did not begin to run until March 3, 2006, or alternatively, that the "continuing violation theory" or equitable tolling raises a genuine issue of material fact to prevent summary

---

*v. Potter*, 2005 WL 1148734 at * 1 N.D.Tex. May 16, 2005) (refusing to consider untimely summary judgment response filed without leave of court); *Nelson v. City of Watauga*, 2004 WL 239748 at *1 (N.D.Tex. Jan. 13.2004) (same). Notwithstanding the disservice by Plaintiff's counsel's to her client, the Court will consider the response and evidence, particularly for the statute of limitations issues, in the interests of justice. *Graham*, 2006 WL 2468715 at *4 (noting under ordinary circumstances court prefers to decide action on merits); *Dallas County Hosp. Dist. v. Blue Cross Blue Shield of Texas*, 2006 WL 744983, *1 (N.D. Tex. 2006) (reviewing summary judgment motion on merits despite plaintiff's failure to file timely response, file late response with leave of court or move for an extension).

judgment. DISD, in reply, disputes the competency of Plaintiff's record evidence.[4] The Court will now address the arguments of the parties.

### C.  Statute of Limitations

Before turning to the merits of Verrett's claims, the Court must first address DISD's statute of limitations defense. Both parties agree that the discrimination claim runs from "the date on which the alleged discrimination act occurred." Pl. Resp. 8; Def. Reply. 4. Their respective application of this axiom, however, is at loggerheads.

*1.     ADEA and Retaliation Claims*

As a threshold matter, a plaintiff must have submitted a timely charge of discrimination. *Ledbetter v. Goodyear Tire & Rubber, Co.*, 127 S. Ct. 2162, 2166 (2007). Under either Title VII or the ADEA, a plaintiff must file a charge of discrimination with the EEOC within 180 days after the alleged discriminatory act or within 300 days of filing a charge with a state agency. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). The clock begins running "when the discriminatory act occurs." *Ledbetter*, 127 S. Ct. 2166. The only alleged act of age discrimination at issue is the $45,636 salary proffered to Verrett for her new position as Instructional Specialist in October 2000

---

[4] Specifically, DISD objects to the unsworn conclusory statements (*in passim*) and unauthenticated evidence (Pl. App. 27-30). DISD's objections are sustained. Unsupported assertions are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994) (rejecting unsubstantiated assertions as competent summary judgment evidence); *Grizzle v. Traveler's Health Network*, 14 F.3d 261, 268 (5th Cir. 1994) (finding plaintiff's self-serving generalized testimony insufficient); *see generally Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5rh Cir. 1992) (noting nonmovant's evidentiary burden could be satisfied with depositions, affidavits and other competent evidence). Additionally, Verrett's summary judgment evidence from a third-party that is critical to showing alleged salary disparities is unauthenticated and hence, not competent summary judgment evidence. Fed. Rule of Evid. 901 ("The requirement of authentication or identification as a condition precedent to admissibility"); *see, e.g., Dertz v. Fibreboard Corp.,* 765 F.2d 456 (5th Cir. 1985) (noting plaintiff's failure to demonstrate source of minutes). Such evidence is also excludable as hearsay. Fed. Rule of Evid. 802.

or, alternatively, when Tapia confirmed the calculated salary in his January 2002 letter.[5] Thus, no reasonable trier of fact could conclude that Verrett's January 3, 2007 charge with the Texas Workforce Commission was timely.

Verrett's reliance on *Bazemore v. Friday*, 478 U.S. 385 (1986) to argue that each paycheck triggers a new accrual period for the statute of limitations is misplaced and ignores *Ledbetter*. Notably, *Bazemore* involved competent summary judgment evidence of a pattern and practice of racial discrimination against black employees. *Id.* at 398 (recognizing multiple regression analyses proved pattern and practice of salary disparities). Whereas here, there is no competent summary judgment evidence whatsoever that would permit a trier of fact to reasonably conclude that the DISD salary scale is geared towards discriminating against older teachers, *Bazemore* has no application. Rather, the record evidence shows that, like *Ledbetter*, the DISD pay-setting decision was a "discrete act" that should have prompted Verrett to submit a timely claim. Def. App. 27, 65-66; Pl. App. 16-17. Similarly, Verrett's position that the limitations period did not begin to run until she herself concluded that her age was the purported motive contravenes controlling authority. *See Merrill v. Southern Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (noting limitations period runs when plaintiff knows or should reasonably know of alleged discriminatory act not discriminatory motive).

*2.     Breach of Contract Claim*

Verrett's breach of contract claim is also untimely. Under Texas law, a breach of contract

---

[5] Verrett's claim of "vacillation" by DISD officials over her proper salary calculation defies a plain reading of the record evidence. *See Delaware State College v. Ricks*, 449 U.S. 250, 262 (1980) (noting "unbroken array of negative decisions" from board president, tenure committee, faculty senate and board of trustees).

claim must be filed within four years. Tex. Civ. Prac. & Rem. Code § 16.004. For the same reasons set forth *supra*, Verrett's breach of contract claim is barred by the statute of limitations.

    3.    *Tolling*

Verrett's alternative arguments, equitable tolling and the continuing violation theory, are without support. First, there is neither authority or record evidence to support Verrett's equitable tolling argument. There is simply no evidence that DISD engaged in "misrepresentations, coercive tactics or fraud" that frustrated Verrett's efforts to file her discrimination charge to warrant equitable tolling. Likewise, the pendency of Verrett's appeals has no tolling effect on the limitations period. *Ricks*, 449 U.S. at 261 ("the pendency of a grievance, or some method of collateral review of an employment decision, does not toll the running of the limitations period."). In *Ricks*, the limitations period began to run for the teacher, at the latest, June 26, 1974, when the president offered the teacher a "terminal" contract. *Id.* at 261-62.

Second, the continuing violation theory mandates that one discriminatory act occur during the limitations period, *i.e.*, another discrete act between October 2000 and January 2007. *Butler v. MBNA Technology*, 111 Fed. Appx. 230, 232 (5th Cir. 2004) (requiring plaintiff to show "a series of related acts" and that "an organized scheme led to and included the present violation"). To show that the acts in question are sufficiently related, the court must consider: (1) whether the alleged acts involve the same type of discrimination; (2) whether the acts are recurrent; and (3) whether the acts have the degree of permanence that alert the employee to assert his rights. *Id.* at 232-33 *citing Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). Without any competent evidence to show an additional act, let alone whether the additional act would be sufficiently related to the first one, Verrett cannot cling to the continuing violation theory to avoid the limitations issue.

D.  **ADEA Discrimination Claim**

The crux of Verrett's ADEA claim is that DISD offered her a lower salary because she is over 40-years old. Notwithstanding the untimeliness, the Court notes that no reasonable trier of fact would conclude that she would even meet her burden, particularly the *prima facie* element that Verrett was paid less than a younger, similarly situated employee.

Under the ADEA, Verrett must prove intentional discrimination with direct or indirect evidence. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 336 (5th Cir. 1997). Via the indirect evidence route, Verrett must employ the *McDonnell Douglas* three-step burden shifting analysis. *Id.* at 336-37 (applying *McDonnell Douglas* framework to ADEA case). First, the plaintiff must establish a *prima facie* case of age discrimination, and then, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. Once the defendant meets its burden, the plaintiff then must offer sufficient evidence to create a genuine issue of material fact that the proffered legitimate, non-discriminatory reason is either not true (pretext) or, while true, is only one of the reasons and another motivating factor is the plaintiff's protected characteristic (mixed motive). *Reeves v. Sanderson Plumbing Products* 530 U.S. 133, 142-43 (2000) (applying *McDonnell-Douglas* framework to ADEA case); *see also Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) (holding that the mixed-motive theory of discrimination is available in cases with circumstantial evidence of discrimination).

As part of her *prima facie* case, Verrett must show that she was paid less than a non-member of her class who bears substantially the same responsibility. *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984). However, there is no competent summary judgment evidence to show she was paid less. *Baker v. American Airlines*, 430 F.3d 750, 753 (5th Cir. 2005) (observing

plaintiff need only make "low showing" for *prima facie* case). The purported DISD salary charts relied upon by Verrett are unauthenticated third-party documents and excludable as hearsay. The sworn Tapia affidavit instead shows that Verrett's 2000-01 salary was actually $1,311 *more* than Verrett's own purported comparator. Devoid of any evidence to show a material issue of fact exists, Verrett's action, if timely, would fail as a matter of law.[6]

### E.    Retaliation Claim

Verrett's retaliation claim (ostensibly under Title VII or the ADEA) is built upon the undisputed fact that DISD sought in a letter to establish a repayment schedule for the overpayment of her salary. In other words, because she was purportedly engaging in protected activity, DISD unlawfully retaliated against her by seeking repayment from her.

In order to prove a claim of retaliation, Verrett must first make a *prima facie* showing that she engaged in protected activity, suffered an adverse employment action and a causal nexus between the protected activity and the adverse action exists. *Scrivner v. Socorro Ind. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999) (finding plaintiff failed to offer any admissible evidence of causal link). While Verrett's overall record evidence is deficient in numerous facets, the one most fatal to her retaliation claim is the lack of any competent evidence that Verrett suffered an adverse employment action. DISD admittedly advised Verrett of their intent to recoup the overpayments, but there is no dispute that DISD never actually took steps to recover overpayment. To the contrary, Verrett has been promoted and her salary has increased on an annual basis since the purported discriminatory and

---

[6] The Court also notes there is no evidence whatsoever showing that DISD's stated, non-discriminatory basis was pretextual. Her self-serving supposition that age was DISD's true motive in insufficient as a matter of law. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

retaliatory actions by DISD. For these reasons, her retaliation claim fails.

   D.   **Breach of Contact Claim**

Finally, Verrett's breach of contract claim must likewise fail as a matter of law. Pursuant to the Texas Education Code, Verrett must appeal to the Commissioner of Education any "actions or decisions of any school district board of trustees that violate . . . a provision of a written contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee." Tex. Educ. Code § 7.057; *Hoskins v. Kaufman Indep. Sch. Dist.*, 2003 WL 22364356, *2-3 (N.D. Tex. Aug. 25, 2003) (dismissing contract claim for failure to exhaust administrative remedies). Here, the summary judgment evidence is clear. Verrett did not appeal any breach of contract claim, and her claim is barred as a matter of law.

   **III. CONCLUSION**

For the foregoing reasons the Court GRANTS Defendant's motion for summary judgment in entirety.

   **SO ORDERED.**

   **September 3, 2008**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE